GREEN, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover $73,132.50 under a contract for transporting mails upon a route from New York to ports on the west coast of Africa. The contract provided that the plaintiff should be paid a certain amount per mile and the question involved is how that mileage should be computed. The plaintiff claims that the amount of its compensation should be determined upon the basis of mileage to all ports at which calls were made on the route, regardless of whether or not mails were dispatched to all of such ports. The defendant’s contention is that only the *243 mileage between, ports to which the mails were actually dispatched should be used in making the computation.
There is no dispute as to the facts in the case, and the case turns upon how the provision in the contract with reference to compensation is to be construed.
The contract itself provided “for compensation based upon the mileage by the shortest practicable route between the ports of call on each outward voyage.” If there were nothing else to guide us than this language, it may be that plaintiff’s contention ought to be sustained, but the contract itself provides that the contractor and sureties “ bind themselves pursuant to the merchant marine act, 1928, and the said advertisement of the Postmaster General ” — being the advertisement inviting proposals for carrying mails. It therefore becomes necessary to examine the advertisement pursuant to which the contract was executed and the other provisions of the contract in order to determine what was the understanding of the parties at the time the contract ■was made.
The advertisement which invited proposals for bids for the service involved herein is more definite as to the compensation to be awarded the contractor than the contract itself. This advertisement recited, among other things:
“The mileage on the outbound voyage between termini by way of such intermediate points as are specifically stated on the routes herein, shall be the mileage for the basis of bids and of payment for service; pay for service to other ports at which vessels may voluntarily call to be covered by the pay on said outbound mileage of the route specifically stated.”
It will be observed that the proposal stated that the mileage which was the “ basis of bids and of payment for service,” should be “the mileage on the outbound voyage between termini by way of such intermediate points as are specifically stated on the routes herein.” The words “ routes herein ” manifestly referred to certain ports on “ Route 17,” which is the only route referred to in the advertisement. This statement from the advertisement is repeated in the contract, but we do not find either in the advertisement or the contract any points or ports specifically stated. Not *244 withstanding this omission, we think that so far as the advertisement is concerned the meaning is fairly clear as the last clause of the quotation from the advertisement above set forth recites “ pay for service to other ports at which vessels may voluntarily call to be covered by the pay on said outbound mileage of the route specifically stated.” (Italics ours.) The words “ ports at which vessels may voluntarily call ” can refer to nothing else than ports to which the contractor was not obliged to carry mail and at which the ships might stop or not as the managers of the line saw fit. The pay for service to such points was to be covered by the pay received for service actually required by the Post Office Department in carrying the mails. In other words, the mileage traveled in proceeding to points where the vessels “ voluntarily called ” was to be excluded in computing the amount of the contractor’s pay. Having reached this conclusion, it follows that unless there was something in the contract that makes a contrary intention evident, the plaintiff will be bound by the terms of the advertisement which invited proposals for bids.
We do not think there is anything in the contract itself that negatives the provisions of the advertisement which, as before stated, were made part of the contract. On the contrary, there are some matters that tend to support the conclusion that it was understood that the contract followed these requirements.
It will be observed that the contract provided—
“ 1. That the ports of call and the frequency of calls of vessels on this route may be changed by the contractor with the consent of the Post Office Department.”
We think this provision is inconsistent with the meaning attached to the words “ ports of call ” by the plaintiff. The plaintiff had no need for the consent of the Post Office Department to stop at any point where its vessels “ voluntarily called.” Manifestly the Post Office Department had no control over this matter as long as the points were somewhere within the general route for which provision was made, and it is equally clear that the parties so understood. The findings show that the plaintiff, some days prior to each *245 sailing, transmitted to the Postmaster General and the postmaster of the city of New York a schedule of the voyage showing the points at which calls would be made. The defendant then caused to be dispatched upon the vessels making such voyages such mails as it desired to have transported to any of the ports listed in the schedule of sailing. The evidence fails to show that the defendant had anything to do with preparing this schedule which presumably was made up in accordance with the general provisions of the contract.
There is another provision of the contract which appears to us to be inconsistent with the construction placed thereon by plaintiff. The contract recites—
“ 3. That if mutually agreed to by the Postmaster General and the contractor, the Post Office Department may extend the service to additional ports, curtail the route to omit ports, change the service to substitute ports, or increase or reduce the number of trips, with allowance of not exceeding the contract rate for the increased outbound mileage involved and with a deduction at the contract rate for any decreased outbound mileage involved.”
It will be observed' that under this provision the Post Office Department might “ curtail the route to omit ports, * * * with a deduction at the contract rate for any decreased outbound mileage involved.” It seems to us that if plaintiff was to get mileage for ports at which its vessels voluntarily called, there could be no object in inserting such a provision in the contract, for if the contract is to be construed as plaintiff contends it would be allowed mileage in any event for ports at which its vessels voluntarily called. Moreover, unless there was some way of defining the ports at which plaintiff’s vessels were obliged to call there would be no way of omitting ports or adding ports, or changing the service to substitute ports, for there would be no basis for such action. If it be said that the Post Office Department failed to make up any schedule of ports to which the contractor was obliged to carry mail, the fact still remains that it had the right so to do, and, as we think, this provision is inconsistent with any understanding between the parties that ports of call referred to all ports at which plaintiff’s vessels *246 stopped. As before stated, the contract recited that it was made pursuant to the merchant marine act of 1928 and that the parties bound themselves thereby. In any event the Postmaster General had no authority to make contracts for carrying the mails beyond that given by this act.
Subdivision (d) of section 409 of the merchant marine act of 1928, 45 Stat. 689, 695, lays down the rule by which the mileage on mail contracts shall be computed. It is as follows:
“(d) The Postmaster General shall determine the number of nautical miles by the shortest practicable route between the ports involved and payments under any contract made under this title shall be made for such number of miles on each outward voyage regardless of the actual mileage traveled.”
This provision, like the contract, is not as definite as might be desired, but taking it as a whole we think it is not in accord with plaintiff’s contentions. Its proper construction turns upon the meaning of the words “ ports involved ”, and to ascertain the intent of Congress we must consider the whole of the act insofar as its language bears on the question of how the payments should be made.
At the outset it should be observed that the act under consideration gave the Postmaster General no authority to contract for anything except to carry the mails. It is argued with considerable force on the part of plaintiff that the act in question had a purpose beyond merely carrying mails; namely, the building up of a merhant marine and increasing the amount of American shipping. Conceding for the purposes of the argument that this is true, we think it does not expand the powers of the Postmaster General which were controlled by the provisions of the act.
As the act itself gives the Postmaster General no power beyond that of making contracts to carry the mail, it does not, as we think, extend to payment for voyages made for other purposes. The powers of the Postmaster General being limited in this respect, we think the words “ ports involved”, as used in the act, mean ports to which mails were dispatched or carried. This conclusion is supported *247 by the last clause of the subdivision quoted which states that payments “ shall be made for such number of miles on each outward voyage regardless of the actual mileage traveled.” We think we can safely assume that the parties to the contract did not consider that when plaintiff’s ships called at ports where mail was not dispatched they would use anything but the shortest practicable route in so doing. The provision that the measurement should be made between the ports involved “ regardless of the actual mileage traveled ” would become meaningless if plaintiff’s contention were sustained, or at least of little value to the Government. We think that this provision was inserted for the benefit and protection of the Government and that we should construe it accordingly.
Plaintiff’s principal contention with respect to the provision above quoted is that it gave the Postmaster General the right to determine the number of miles for which payment should be made, that the Second Assistant Postmaster General did so determine, and that his conclusion is binding upon the defendant. We think this contention involves a misconstruction of the statute which, in our opinion, gave the Postmaster General no authority to determine “ the ports involved.” As before stated, the law gave the Postmaster General authority to contract only for carrying the mails. The only “ ports involved ” in such a contract are the ports to which such a contract required mail to be carried, not ports where plaintiff’s ships voluntarily stopped for purposes other than carrying the mails. It should be noted in this connection that under the contract the Post Office Department could “ extend the service to additional ports ” with allowance for additional pay at the contract rate. The contract therefore bound the contractor to carry mail to any port along the route to which the Postmaster General requested mail to be delivered, with the result that the contract as a whole bound the Government to pay on the basis of mileage to any port to which mail was dispatched by direction of the Post Office Department. As we have shown above, tjie ports involved in the contract were the ports to which the Post Office Department directed mail to be carried, and if we are *248 correct in this the Postmaster General had no authority to determine that some other ports were involved. His authority extended only to determining the mileage between these ports by the shortest practicable route, and if the plaintiff’s ships voluntarily called at ports to which no mail was dispatched that was its affair and no additional compensation can be awarded by reason thereof. The cases cited by plaintiff on this branch of the case apply only where either the statute or the contract itself gave some officer of the Government authority to determine the matter upon which the case depended. In such event, the determination of the Government official is final and binding upon the parties. But these decisions have, as we think, no application here.
It is well settled that in construing the meaning of a contract where its provisions are ambiguous or doubtful that the court may take into consideration the reasonableness or unreasonableness of the construction or constructions sought to be given when all the circumstances surrounding it and its purpose are considered. The same rule applies in construing statutes. When this is done we think it appears unreasonable to suppose that the parties should have intended what the plaintiff now contends the contract means, and equally unreasonable that Congress intended to grant the power to make such a contract to the Postmaster General. This construction would have permitted the plaintiff to stop its vessels at every little port along the line whether it had any business there or not and greatly increase its pay without giving any additional service whatever to the Government. Such an interpretation ought not, as we think, to be placed upon either the contract or the statute in the absence of something appearing to support a contrary meaning when the circumstances connected with the contract and act are considered. Upon such a consideration, we find nothing that supports the construction which is contended for by plaintiff.
It is specially urged on behalf of the plaintiff that the construction for which it contends was placed upon the contract by both parties, that is, by the Postmaster General and the officers of plaintiff, while the contract was being performed. In determining this matter it is necessary to *249 consider the correspondence and transactions had between the parties, and also between them and the Comptroller General.
It appears that on August 24,1928, the Post Office Department addressed a letter to the plaintiff stating, among other things, that—
“ In order that the proper information may be given the Hydrographic Office of the Navy Department for the purpose of computing the correct mileage between the various ports shown on your schedule of sailings from New York, N.Y., to West Africa, it is requested that you furnish this office with the names of the ports at which your steamers actually call and the consecutive order in which they are reached.”
To this letter the plaintiff, on August 28, 1928, responded, inclosing sailing schedules and stating that “ no two steamers call at exactly the same ports ” and that certain ports mentioned therein “ are regular ports of call for these particular services.” In the letter' there followed a more particular description of the schedules. Thereafter, the Post Office Department wrote the defendant a letter stating the mileage between ports involved on this route (route no. 11) “ from New York to ports on the West African Coast.” Subsequently, on October 29, 1928, the Post Office Department addressed another letter to the plaintiff with reference to the contract for mail service, stating, among other things, that “ since payment is to be made according to mileage,, it appears necessary to provide some definite means of ascertaining a mileage on which to base payment ”, and also inquiring whether the plaintiff agreed to “ a statement of the route on three branches as given under the three services stated in the schedule, payment to be based on the shortest mileage by way of those ports specifically stated, with deduction for decreased mileage in the event any of' them be omitted on any voyage, and the other ports at which vessels may occasionally call to be disregarded.”
To this letter the plaintiff replied on November 16, 1928, stating, among other things, that “ We have been giving this-considerable thought, * * * and as a matter of fact,. *250 we think it would be more satisfactory also to your Department — to have the mileage on each voyage calculated.” Also that it is “ our understanding that we are to accept mail for all ports of call.”
The inquiry was direct and plain. If the plaintiff’s officials had understood when the contract was executed that the steamship company was to receive pay based on mileage to all of the ports where its vessels stopped, it is obvious that it would not have replied, “We have been giving this considerable thought,” and failed entirely to answer the question propounded in the letter received from defendant. The conduct of plaintiff’s officials at that time would seem to indicate that the letter of the Post Office Department brought a new suggestion and that this was the first time that it occurred to them that they might obtain payment for mileage to ports not on the regular schedules and to which no mail had been dispatched. This tends to show that at the time the contract was entered into, plaintiff’s officers had not placed upon the contract the construction for which they now contend. The utmost that can be properly claimed from the correspondence above referred to is that at the time it was written neither the Post Office Department nor the plaintiff’s officials had definitely concluded what the contract meant.
In the meantime, on October 24, 1928, the Postmaster General submitted to the Post Office Division of the General Accounting Office a, statement showing the nautical miles between certain of the ports involved on route no. 17, regardless of whether the defendant dispatched mail to all of the ports designated therein, the mileage being computed on the distance between the ports shown on schedules contained in descriptive circulars issued by plaintiff. At that time, however, the schedules of the ports of call for the sailings made under date of October 1, and October 18, 1928, although furnished by the plaintiff to the Post Office Department, had not been brought to the attention of the subordinate in the department preparing this letter. On re-receipt of the letter last referred to by the General Account *251 ing Office, the Post Office Division thereof verbally informed the Director of the Division of Foreign Mails in substance that any payment of the amount which would be due on each voyage must be certified upon the basis of the mileage to ports only to which mail had been actually dispatched.
In January and February 1929 the Postmaster General, in accordance with the position taken by the Post Office Division of the General Accounting Office, submitted to that division a statement showing the ports to which mails had been delivered by plaintiff and the nautical mileage on the outbound voyage to each port of call ,to which mail had been actually dispatched, without any reference to other ports. The General Accounting Office, in February and March of the same year, authorized payments to be made to plaintiff of two-thirds of the tentative amount of compensation based upon the mileage so stated by the Postmaster General for service performed up to and including January 31, 1929, which, as before stated, included only mileage to ports to which mails were actually dispatched. By this time the officers of the company seem to have concluded that under the contract they were entitled to pay for service performed on the basis of mileage covered between all of the points of call and not merely to those to which mails were actually conveyed, and called in person upon the Post Office Department and submitted certificates of the mileage completed on each of these voyages accordingly. They were successful in getting the Acting Director of the Division of Foreign Mails to agree with this view, and he submitted to the General Accounting Office a revised statement of the mileages with a letter dated May 28,1929, signed by him and stating that “ This department interprets this contract to mean that the steamship company is entitled to payment for mileage involved on each voyage from New York to ports as above stated whether the mails are dispatched to each port or not.” But the Comptroller General ruled that it must have been understood by the parties making the contract “ that only ports to which mail was dispatched were to be taken into consideration,” and the Post Office Division *252 of tbe General Accounting Office lias authorized and certified payments for all voyages on the basis of mileage to those ports only to which mails were actually dispatched.
A review of this evidence shows that the construction which plaintiff now seeks to have placed upon the contract has not been followed consistently by either party. We have already referred to the letter of the Post Office Department of October 29,1928, inquiring in substance whether plaintiff agreed that ports to which mails had not been dispatched were to be excluded in computing the mileage, and the letter of plaintiff in reply dated November 16, 1928. It has also been shown that before this exchange of letters took place, the Postmaster General had ■ submitted to the Post Office Division of the General Accounting Office a computation of mileage between all ports on the route regardless of whether mail was carried to them and was verbally advised that the mileage to ports to which mail was not dispatched could not be included. The Post Office Department accepted this decision and submitted a statement showing the ports to which mail had been dispatched and the mileage traversed to these ports only. Then and not until then did the plaintiff’s officials insist that they were entitled to additional mileage of the distance to ports at which its ships voluntarily called. The Post Office Department, through the Second Assistant Postmaster General, then reversed itself and stated that the plaintiff was entitled to payment for mileage “ to ports as above stated whether the mails are dispatched to each port or not.” The Comptroller General then made a specific ruling to the contrary and the Post Office Department has since followed this ruling.
There is nothing in this evidence that supports the contention made on behalf of plaintiff. The defendant has acted inconsistently and its last declaration is in favor of the plaintiff but the fact that the Post Office Department has wavered back and forth since the contract was made throws no light on the intentions of the parties at the time of its execution. Moreover, and this is especially important, there is no evidence that plaintiff at any time changed its course of action in consequence of any assurance from de *253 fendant that its pay would be computed in accordance with the claim that plaintiff now makes.
Taking all of these matters into consideration, we conclude that both parties understood at the time the contract was executed that the words “ ports of call,” as used in the contract, referred only to points to which mail was dispatched. The plaintiff has been paid on this basis and brings this suit only to recover for mileage to other ports to which no mail was dispatched. Under the construction that we have put upon the contract; the plaintiff is entitled to nothing further than it has already received. The petition must be dismissed and it is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, OMef Justice, concur.
memorandum by the court on motion eor new trial
Two points are specially urged by counsel for plaintiff on motion for new trial. The first is that the court erred in its conclusion as stated in the opinion that the Postmaster General had no authority under the law to make a contract for anything but carrying the mails. This statement did not mean that the Postmaster General did not have authority to contract for services of any kind which were necessary for the proper carrying of the mails or would facilitate such services, for undoubtedly he had such authority. But the voyage of vessels to ports to which no mail was dispatched was in no way necessary for carrying the mails nor did it in any way facilitate such carriage. This matter merely relates to the compensation. It will be observed, however, that it is not necessary that the decision of the court should rest upon our construction of the law which gave the Postmaster General whatever authority he had in the case, as we have construed the contract itself as making no provision for the payment which plaintiff claims.
The other point strenuously urged by counsel for plaintiff is that if the contract be construed in accordance with the opinion of the court the Postmaster General could dispatch the mails by some other line leaving the plaintiff no mail to carry and refusing to pay the plaintiff any compensation. *254 We think it clear this contention is not well founded. The Government contracted with the plaintiff to carry the mail referred to therein and after letting the contract to plaintiff it could not hire someone else to do the work and refuse to pay plaintiff for it. This would be a manifest breach of the contract for which the defendant would be liable. It is also said that upon some of the voyages there might be no mall to carry. The circumstances of the case would seem to show that the contract was based on the assumption not only that there was mail to be carried but that plaintiff would derive only a portion of its revenue from the carriage of the mails. From the nature of the case it would naturally be expected by both parties that the greater part of such revenue would be derived not from carriage of the mails but from freight. Certain it is that if we are not permitted to derive any conclusions from the surrounding circumstances, we have nothing to show that plaintiff did not expect to obtain the greater part of its revenues from the carriage of freight. But we need not pursue the discussion on this point for its determination is not necessary to the decision of the case nor does it materially aid in construing the contract. If we are correct in our construction of the contract, then even if there was some risk that there might be no mail to be carried ■on some voyage (which the evidence does not show) this was a risk that the plaintiff assumed. The motion for new trial must be overruled. It is so ordered.